DELMONICO *v.* ROUDEBUSH and others.

*(Circuit Court, D. Colorado.* December 16, 1880.)

1. CONTRACT—CONVERSION.—The part owner of a contract for the purchase of a mine cannot use the same for the purpose of obtaining the title to the mine for a third party, without the consent of his associates.

2. SAME—SAME.—In such case an associate is entitled to share, in proportion to his interest in the contract, in the property obtained by such part owner for his individual benefit through the use of such contract.

3. SAME—SAME.—Such claim by the associate will not be defeated by the fact that the property obtained by such part owner was not wholly in return for the use of such contract.

4. SAME—SAME.—A. and B. were part owners of a contract for the purchase of a claim to a mine. A. used such contract for the purpose of procuring such claim for C. without the consent of B., and also secured another outstanding title for the benefit of C. In return for these services, C. gave A. an interest in the mine. *Held,* that B. was entitled to an interest in A.'s share of the mine proportionate to B.'s interest in the original contract.—[ED.

In Equity.

*M. B. Carpenter* and *Elihu Root,* for plaintiff.

*J. Y. Marshall,* for defendants.

HALLETT, D. J. In the month of May, 1879, Irving Howbert and others were in possession of the Robert E. Lee mine, near Leadville, and engaged in working it. These persons resided at Colorado Springs, in this state, and from that circumstance, and to distinguish them from other claimants of the same property, they are called in the pleadings the Colorado Springs party. Other persons claiming adversely to the Colorado Springs party resided in Denver, and they are called in the pleadings the Denver party. Harmon F. Lee

and Charles Stockbridge constituted a third party, who claimed the same mine in opposition to both the others.

On the tenth of May, 1879, Lorenzo D. Roudebush, a defendant to this bill, agreed with James V. Dexter, who represented the Denver party, to purchase that title for the sum of $165,000, payable within 90 days. The agreement appears in a letter from Dexter to Roudebush, in which the former agrees to give a title bond for the property, upon the payment of $10,000, on or before the seventeenth of that month. The time for such payment was afterwards extended to the twenty-seventh of May. No bond was ever given in accordance with this proposal, but the $10,000 was paid, as will be hereafter stated. On the fifteenth of May, 1879, Roudebush obtained from the Colorado Springs party a bond to convey their interest in the property upon payment of $135,000 within 60 days, $10,000 of which was to be paid on or before May 26, 1879. With these papers Roudebush went to New York, arriving there about the twentieth of the same month of May, and entered into negotiations with James M. Selover, a broker, residing in that city. Such negotiations resulted in an agreement by which Selover was to furnish the money to purchase the property—amounting to $300,000—for an interest of five-eighths in the mine, Roudebush retaining three-eighths. Thereupon, Selover applied to the plaintiff, Charles Delmonico, who agreed to take an interest of one-sixteenth in the mine, and to pay $5,000 of the $20,000, which, as before stated, would become due under the agreements on the twenty-sixth and twenty-seventh of the month of May. Selover also applied to John P. Jones, who in turn applied to Jerome B. Chaffee, and Chaffee agreed to pay $15,000 of the $20,000 before mentioned, and to take an interest of six-sixteenths in the mine for himself and Jones. These sums were accordingly paid to Selover by Delmonico and Chaffee, by checks drawn on banks in New York, and these checks were turned over to Roudebush, and by him applied to the payment of the sums falling due under the agreements aforesaid on the twenty-sixth and twenty-seventh of May.

To determine the relations of the several parties at this point of time,—that is to say, after $10,000 had been paid upon each of the agreements,—it may be useful to recount that Roudebush had obtained an agreement to purchase the interest of the Denver party for the sum of $165,000, payable on or before August 8, 1879, of which $10,000 had been paid out of money furnished by Delmonico and Chaffee; that Roudebush had also an agreement to purchase the interest of the Colorado Springs party for the sum of $135,000, payable on or before July 15, 1879, of which sum $10,000 had been paid out of moneys furnished by the same parties; and the property, when purchased, was to be held by the parties as follows; that is to say: Chaffee, three-sixteenths; Jones, three-sixteenths; Delmonico, one-sixteenth; Selover, three-sixteenths, and Roudebush, six-sixteenths. Some changes were afterwards made in the stipulations of the parties, not very material to be noticed in this connection, as that the · amount of the purchase money to the Denver party was reduced by $50,000, making the aggregate to be paid to that party only $115,000; and Chaffee's interest in the property was enlarged by contributions from Selover and Roudebush. But the interest of the plaintiff was not in any way changed by these negotiations, and all of the parties named retained some interest in the contracts as intending purchasers.

At the time the arrangement with Delmonico and Chaffee was made, it seems that some hope was entertained that the purchasers would be able to obtain possession of the property upon the payment of the $20,000, and that they would be able to take from the mine the balance of the purchase money within the time limited for its payment. But there was nothing in the agreement to warrant such expectation; and, in fact, the bond of the Colorado Springs party expressly provided that the grantors should retain possession until final payment should be made.

Soon after the payment of the money, and probably about the first of June, 1879, application was made to the Colorado Springs party to deliver possession to the purchasers, which application was refused; and then, if not before, it must

have been known that the entire sum would have to be raised
to complete the purchase.    Upon this it seems to have been
understood that Chaffee and Delmonico would pay the entire
amount—the latter according to the interest to be acquired
by him, one-sixteenth of the whole, and Chaffee to pay the
remainder.

Before the money became due to the Colorado Springs
party, Jones and Chaffee came to the state apparently with
the view to complete the purchase, and after some examina-
tion of the property and the title to it, Chaffee declined to go
on, upon the ground that the Lee and Stockbridge title was out-
standing; and thereupon it is conceded that the contract
with the Colorado Springs party expired by its own limita-
tion.    Some time remained—that is to say, until the eighth
of August—before the contract with the Denver party would
expire, and in this interval Roudebush entered into negotia-
tions with the Denver party with a view to acquire their
interest for the Colorado Springs party.    He also arranged
for the sale of the Lee and Stockbridge title to the Colorado
Springs party, and this probably entered into the purchase of
the Denver party's title.    The evidence is not clear on that
point, but it is shown that $10,000 was paid for the Lee and
Stockbridge title, of which the Denver party contributed one-
half, and the Colorado Springs party one-half; and probably
this arrangement could not have been made except upon
some understanding as to the settlement of all controversies
between the parties.    It is hard to believe that these two
parties would have come together to purchase the Lee and
Stockbridge title without some accommodation of the contro-
versies then pending between them.

In the last days of July, the sale by the Denver party to
the Colorado Springs party was effected through the agency
of Roudebush, and the principal question in the case is
whether this was done pursuant to the contract between Rou-
debush and the Denver party.    Upon that question there are
several circumstances of great weight.    Although the contract
was not completed by the conveyance from the Denver party
to the Colorado Springs party until some time afterwards,

the agreement was, in fact, made during the life of that contract; that is to say, before the eighth day of August, 1879. And, at the time the agreement was made, Roudebush was in a position to enforce a conveyance of the property from the Denver party. The sum paid for the property was precisely that specified in the contract with Roudebush; and, as both parties to the agreement had received large sums of money under the old contracts, it is reasonable to believe that they would deal with each other more favorably on account of such payments. Roudebush, as a defendant in the suit and a witness in the cause, does not claim that any new arrangement was made between the contracting parties, or that the sale was other and different from that specified in the contract between himself and the Denver party. During the pendency of the contract with the Colorado Springs party, that party had been in possession of the property, and had ascertained that it was of great value, and they were gratified with the failure of that contract, and anxious to purchase the adverse titles of the Denver party and the Lee and Stockbridge party. So anxious were they that they agreed to give and did give to Roudebush one-fifth interest in the property for his services in getting in those titles. All the circumstances of the transaction by which the Colorado Springs party acquired full title to the property, lead to the conclusion that the contract with the Denver party was used to bring about that result. In that way the defendant Roudebush gained an interest of one-fifth in the property, and the question for consideration is whether he shall be allowed to retain that interest as against the plaintiff, who was jointly interested with him in the contract with the Denver party.

In admitting Chaffee and Delmonico to an interest in the contracts in May, and in receiving from them the $20,000 with which to make the first payments under those contracts, it is apparent that Roudebush became in some sense a trustee for them in the further execution of the contracts. Those instruments were made with him personally, and upon the face of them he alone could enforce their terms. Until the money was paid which was furnished by Chaffee and Del-

monico, the contracts had no force or effect, so that Roude-bush was indebted to them in a substantial way for his position under those instruments. Whatever may be said of the position of Jones and Selover in the transaction, the relations of Chaffee, Delmonico, and Roudebush are not doubtful. They were engaged in a common enterprise, in which each was bound to use good faith towards the other. And this was especially true of Roudebush, who held in his own name the contracts in which all of them were interested. The principle which obtains amongst partners, that all members of the partnership shall be loyal to the joint concerns, extends to those who are negotiating for partnership, to the members of joint-stock associations, to the directors of corporations, and others who are in the same position of trust and confidence. Collyer on Partnership, (6th Ed.) 255, and note.

It is believed that the same rule is applicable to all persons who may be engaged in a common undertaking, and any of the associates who are entrusted with the interests of the associa-tion. Certainly it cannot be said that, of several associates, one may turn the joint concerns or property to his own ad-vantage, without the consent of the others. Whatever the relations of the parties may be, if they have united for a com-mon purpose they must be loyal to that purpose, and no one or more of the number can, without the consent of his asso-ciates, appropriate to his own use the property of all. The use of the contract with the Denver party to secure the title of the property in the Colorado Springs party, was a conver-sion by Roudebush of the property of his associates which equity will not sanction. It matters not that by its own lim-itation the contract would soon expire, and thus become lost to the plaintiff. There is nothing to show that the plaintiff would have furnished the money to be paid under that contract in order to acquire the title of the Denver party; and without such payment the contract must have failed, and all benefit and advantage therefrom would have been lost to plaintiff. But the fact remains that at the time of the appropriation by Roudebush the plaintiff was interested in the contract, and the use of it by Roudebush was without his consent. This is

enough to enable the plaintiff to share in the advantages secured by Roudebush from the use of the contract; and the circumstance that something more than securing the title of the Denver party was done by Roudebush, will not defeat that claim. It seems that Roudebush obtained the Lee and Stockbridge title also for the Colorado Springs party; but, in a case of this kind, the court will not consider whether there were other elements in the transaction than those upon which the plaintiff may rely. The ground of relief is the wrong done to the plaintiff in the use of his means; and, if other considerations entered into the transaction, the plaintiff will not be defeated for that reason. And so it must be said that the plaintiff is entitled to share in the property obtained by Roudebush through the use of the contract with the Denver party, in which the plaintiff was interested. He claims one-sixteenth interest in the mine, according to the terms of his original contract; but as the contracts of purchase were not carried out, and could not be from the failure to pay the purchase money, there is nothing to support that claim. It is more just to say that the plaintiff had an interest of one-sixteenth in the contract with the Denver party, and that he is entitled to share to that extent in the avails of that contract obtained by Roudebush. Upon the settlement with the Colorado Springs party, it seems that Roudebush was given an interest in the mine of one-fifth, and the plaintiff is entitled to one-sixteenth of that interest.

The cause will be referred to a master to ascertain what income has been received from the mine by Roudebush and Pennock; and when his report shall come in a decree will be entered for one-sixteenth of the net income from the one-fifth interest, and for a conveyance of one-sixteenth of the said one-fifth.