[No. 17892. *En Banc.* January 24, 1924.]

EMMA HARM, *Appellant,* v. E. A. BOATMAN *et al., Respondents.*

PETER L. HALE, *Appellant,* v. E. A. BOATMAN *et al., Respondents.*

WILLIAM COLEGROVE, *Appellant,* v. E. A. BOATMAN *et al., Respondents.*

SENTO GARDELLA, *Appellant,* v. E. A. BOATMAN *et al., Respondents.*[1]

JOINT ADVENTURES (1)—RIGHTS AND LIABILITIES—FRAUD—SECRET PROFITS—ACCOUNTING. Joint adventurers, fraudulently inducing co-adventurers to engage with them in the purchase of oil leases for $7,500, previously purchased for $1,000, by misrepresenting the amount paid and failing to put up their share, must account to their co-adventurers for any interest or benefit gained by them; the relation of joint adventurers, as between themselves, being practically the same as that of partners.

SAME (1)—FRAUD—RESCISSION OF CONTRACT—EVIDENCE—SUFFICIENCY. Joint adventurers are not entitled to a rescission, where there was no fraud or deceit inducing them to enter into the formation of a syndicate for the purchase of oil leases; the most that

[1]Reported in 222 Pac. 478.

they are entitled to being the right to participate in the property received by their co-adventurers through a secret or "side" agreement entered into with the owners of the land optioned by the syndicate; since any interest acquired is held for the benefit of all the members.

SAME. In an action by joint adventurers complaining of bad faith by their associates, it is not necessary to show actual injury in order to participate in the property acquired for the benefit of all the members, it being sufficient if they were only slightly prejudiced.

HOLCOMB, J., dissents.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered November 6, 1922, upon findings in favor of the defendants upon plaintiffs' second cause of action, in consolidated actions for rescission, tried to the court. Affirmed.

*Bates & Peterson,* for appellants.

*Lyle, Henderson & Carnahan,* for respondents.

MAIN, C. J.—Five several actions were brought by as many plaintiffs against the defendants Boatman, Krause and Kipling, for the purpose of effecting rescission or cancellation of two certain syndicate agreements theretofore entered into between the respective plaintiffs and defendants, and to recover back moneys paid by the several plaintiffs under the syndicate agreements. Each of the plaintiffs had separate and independent causes of action against the same defendants, in each case for varying amounts, but they all involved the same questions of fact and of law. Two separate causes of action were alleged in each complaint: one to recover moneys paid into a syndicate or pool organized for the purpose of raising $7,500, divided into units of $500 each; and the second to recover moneys paid into a similar syndicate or pool organized for the purpose of raising $16,000; both of which syndicate agreements involved the purchase of

oil and gas leases in counties in the Olympic Peninsula.

Plaintiffs had judgment on the first cause of action in each case, and judgment was entered for defendants on each of the second causes of action. The defendants in each case did not appeal from the judgment on the first cause of action, but plaintiffs have appealed from the judgments in favor of the defendants on the second cause of action.

It was stipulated among all the parties in interest that the cases should be consolidated for the purposes of trial, and at the conclusion thereof one set of findings was made and one judgment entered as to the causes of action involved herein. The respondent Boatman alone has filed a brief in answer to that of the appellants.

The plan seems to have been devised by one Kipling, assisted by Krause and somewhat assisted by Boatman, who was both victim and beneficiary. The first syndicate agreement was entered into June 26, 1920, whereby a syndicate was formed of $7,500 in units of $500 each, Boatman, Krause and Kipling each signing his name and making out his check for $1,000, which checks were attached to the form of syndicate agreement and taken and exhibited to the appellants, who, upon the representations made to them, became parties to the syndicate agreement, paying the alleged balance of $4,500, for the purpose of raising the $7,500 with which to buy oil and gas leases on 160 acres of land in Grays Harbor, Clallam and Jefferson counties, upon which the three organizers claimed to have an option. They, in fact, owned the leases which were a part of a 320-acre tract previously purchased by them for $1,000. They had never paid the sum represented by them to have been paid, and it later developed that the $4,500 paid in by the appellants was divided among them.

Their three checks amounting to $3,000 were not paid. Upon that showing at the trial, the trial court very promptly and properly held that appellants were entitled to rescission of that syndicate agreement and to a recovery of their moneys.

It then appears that, after having completed the payments on the $7,500 syndicate agreement by appellants, a meeting was held at Puyallup on September 29, 1920, all of the appellants and the three organizers being present, whereupon the latter presented a proposition on their part to the syndicate for the purpose of raising $16,000 to purchase leases on another 320 acres of land, alleged to be favorably located for oil and gas exploitation. The agreement was entered into in writing. The name Valley Oil Syndicate was adopted. It contemplated the acquisition of oil and gas leases and the pooling of the interests of all the parties for the purpose of managing and handling the undertaking. On the same date the syndicate entered into an option with one Dunlop and one Demeree for the purchase of 320 acres of gas and oil leases for $16,000. On the same day another and secret, or what is referred to in the testimony thereto as "side agreement," was entered into between Dunlop and Demeree, the owners of the land described in the option to purchase by the syndicate, and the three organizers and a Mr. Eisenhower, which refers to the leases taken under option by the Valley Oil Syndicate, which provides:

"If the said Valley Oil Syndicate shall purchase the entire amount of oil leases this day sold it under an option by the said E. A. Dunlop and C. M. Demeree, then and in that event the transfer herein made to the said Trustee, of the said leases above mentioned, shall become absolute, and for the benefit of the six parties herein named. If, however, the said Valley Oil Syndi-

cate should fail to purchase the entire amount of leases agreed upon under the terms of said contract above referred to, then and in that event the six parties hereinabove named shall be entitled to one acre of the leases herein described for each acre purchased by the Valley Oil Syndicate under its agreement hereinabove referred to, and in that event, the Trustees hereunder shall have the power to select said acreage from that hereinabove described.''

The above agreement was dated September 29, 1920, and was signed by all the parties on that date, except that respondent Boatman was not there present and was unknown to Mr. Eisenhower, who prepared the agreement for the other parties, but his name was written into the body of the agreement as one of the parties thereto. As far as Boatman's connection with this side agreement is concerned, it appears that he did not become a party to it or know of it until after the Valley Oil Syndicate had been formed.

It was not discovered, until about a week prior to the commencement of their actions, that the respondents had received more property and had signed the agreement with others not known to their associates in the syndicates, upon discovery of which the appellants immediately offered to convey all their interest in the leases obtained by the syndicates and demanded a return of their money.

It is appellants' contention that the $16,000 syndicate agreement was void and inoperative from its inception. They contend that the syndicate agreement, the option agreement and the ''side agreement'' were all essential parts of a scheme on the part of respondents to cheat and defraud appellants, and that appellants, upon discovery thereof, had a right to rescind the whole transaction and apply to a court of equity for a judgment affirming such rescission and cancellation of the agreements so made by them.

It is also contended that, having been deceived, and respondents being wrongdoers, appellants had a right to elect such remedies as seemed to them most advantageous, and are not bound to be left to the relation of a partnership or joint adventurers with respondents, after having been inveigled by deceit and fraud into such relation, and be awarded merely an accounting of the benefits of the secret agreement and profits received by respondents, but should be restored to their situation as it was before entering into the syndicate agreement. It is conceded that appellants may affirm the transaction and sue for their interests and secret profits, but that they insist that they are not bound so to do; that they have a right of action to rescind the agreements and compel a restoration of the money with which they parted.

On the other hand, the respondent contends, and the trial court agreed with him and we find that the evidence establishes, that, so far as Boatman was concerned, there was no fraud or deceit inducing appellants to enter into the formation of the syndicate known as the Valley Oil Syndicate; that appellants got all they expected in property by the syndicate agreement, and that whatever fraud was committed by Boatman was committed after the formation of that syndicate; and that the most the appellants are entitled to is participation in the property received by respondents from Dunlop and Demeree. It appears that, at the time of trial, respondent Boatman had leases covering eighty acres, which he was holding in trust for the persons named in the agreement between Dunlop and Demeree, and Kipling, Krause, Boatman and Eisenhower. No evidence was offered as to the value of any of these leases, but at the trial Boatman offered to assign and transfer to appellants their proportionate interest, if any, in his one-sixth interest in these leases,

which offer was refused by appellants. Upon their refusal to accept that offer, the trial court refused appellants any relief, and dismissed the second cause of action as to respondents.

The relations of joint adventurers as between themselves are governed practically by the same rules that govern partners. 15 R. C. L. 500.

In accordance with the principles of good faith and confidence governing the relations of joint adventurers, a joint adventurer may not conceal his interest or profit from his coadventurer. None will be allowed to obtain by secret agreement any advantage over the others. The consent of each joint adventurer is generally given and the money of each obtained upon the understanding and belief that the funds, interests, and aid of each is and will be given to the enterprise within the bounds agreed on. The failure of one of several joint adventurers in an enterprise looking to the purchase of property, to share with his coadventurers any interest gained by the venture after inducing the purchase by the coadventurer, is a breach of confidence and will entitle the coadventurer to have the adventurer receiving the benefits account to his associates in the enterprise.

Nor is it necessary in actions of this character that the parties complaining of the breach or bad faith on the part of their coadventurer should allege and prove that they have actually been injured by his breach of their confidence. Unquestionably it is the general rule that fraud without injury is not ground for relief, either in law or equity; though, under this rule, the injury need not be of such nature that it can be accurately measured in money, but it will suffice if the party or joint adventurer has been but very slightly prejudiced.

The interest that Boatman acquired by reason of the secret agreement after the formation of the syndicate is in law held to have been acquired by him for the benefit of all the members of the syndicate. *Grant v. Hardy,* 33 Wis. 668; *Faulds v. Yates,* 57 Ill. 416; *Emery v. Parrott,* 107 Mass. 95; *Densmore Oil Co. v. Densmore,* 64 Pa. St. 43; *Delmonico v. Roudebush,* 5 Fed. 165.

The cases cited by the appellants are not in point here for the reason that we do not find that there was any fraud on Boatman's part in the inception of the last syndicate. Being no fraud, then that syndicate agreement cannot be rescinded and the appellants allowed to recover what they invested in the deal, but they can only compel the respondent to account for what he received on the side agreement. They refused to accept this and the judgment of the trial court was therefore correct.

MACKINTOSH, FULLERTON, PARKER, TOLMAN, PEMBERTON, MITCHELL, and BRIDGES, JJ., concur.

HOLCOMB, J., dissents.