158 So.2d 191

**Jack A. HAYES et al.**

v.

**Fritz J. MULLER.**

No. 46472.

April 29, 1963.

On Rehearing Nov. 12, 1963.

Dissenting Opinion Dec. 5, 1963.

Rehearing Denied Dec. 16, 1963.

Domengeaux & Wright, Lafayette, for plaintiffs-respondents.

Milling, Saal, Saunders, Benson & Woodward, H. H. Hillyer, Jr., Charles D. Lancaster, Bentley G. Byrnes, New Orleans, George J. Bailey, Victor A. Sachse, Baton Rouge, H. H. Hillyer, III, New Orleans, Charles S. Becnel, Vacherie, Thomas J. Keibert, for amici curiae.

Pugh, Buatt & Pugh, Edwards & Edwards, Crowley, Liskow & Lewis, Lafayette, for defendant.

SUMMERS, Justice.

Plaintiffs Jack A. Hayes and Milton Knox named Fritz J. Muller defendant in a suit seeking judgment ordering defendant to pay to each plaintiff the sum of $300,000.00, or alternatively, for an accounting as a result of a contract of joint adventure involving a certain oil, gas and mineral lease. Plaintiffs allege that the contract of joint adventure was violated by defendant Muller. Defendant filed an exception of no cause or right of action which was maintained by the trial court and plaintiffs' suit was dismissed.

Plaintiffs appealed to the Court of Appeal, Third Circuit, and that court reversed the judgment of the trial court, overruled the exception of no cause of action, and ordered the case remanded to the district court for further proceedings. However, upon application for rehearing the court of appeal granted a rehearing and certified certain questions to this court. See La. App., 146 So.2d 176.

■ Inasmuch as the record accompanies the certification, we treat this case in the same manner as if it had been appealed directly to this court. LSA–Const., art. 7, § 25; Grand v. American General Insurance Co., 241 La. 733, 131 So.2d 46 (1961); Rules of Supreme Court of Louisiana, rule 12, § 4 (Effective April 1, 1962), 8 LSA–R.S.

The petition sets forth that during October, 1953, and for several years prior thereto Knox was District Landman for Kirby Petroleum Company in Southwest Louisiana, and in this capacity had access to and acquired valuable and highly secretive information relating to the location of oil, gas and other mineral resources. Prior to October 1953 Knox, Hayes and Muller entered into joint adventures and in connection therewith Knox would furnish information used in purchasing royalties and leases. In these adventures the parties contributed capital and the knowledge, skill and know-how possessed by each. The proceeds and property resulting therefrom were equally divided.

On and prior to October 8, 1953, Knox, while thus employed by Kirby Petroleum Company, received and obtained valuable information concerning the oil and gas prospects of the Continental, W. Pettijean No. 1 Well in the Rayne Field. With his employer's knowledge and consent Knox decided to purchase royalties and leases in the "Castille" area of the Rayne Field near

the Pettijean well, and to bring about this result he would enter into a joint adventure with Hayes and Muller.

Accordingly, the next morning Knox contacted Muller imparting the information which he possessed concerning the prospect. This information, among other, included electrical logs and core analyses. Knox and Muller agreed to the adventure and to associate Hayes. When Hayes was contacted it was specifically agreed by all three parties that each would contribute $20,-000.00, thereby making $60,000.00 available for the purchase of royalties and leases in the North Rayne and/or Castille area, and specifically in the area northeast of the W. Pettijean No. 1 Well concerning which Knox had obtained the valuable information. Their agreement was further to the effect that all available royalties and leases in the area would be obtained so long as the $60,000.00 was not exceeded and the costs and profits would be equally divided.

Later, on October 16, Muller sought information from Knox as to the advisability of buying royalties affecting properties adjoining the "Sweeney Lease." Knox advised this purchase and any other royalties or leases in the Castille area, for information he possessed indicated a good prospect of production in the area.

In furtherance of the joint adventure certain royalties were purchased in the names of Muller and Hayes. The sum of $46,-013.80 was expended in these transactions, the costs were prorated among the parties to the joint adventure and the interests thus acquired were equally divided by assignments among the parties.

It is alleged that at this same time, on October 16, 1953, Muller, relying upon the information obtained from Knox and Hayes, obtained an oil and gas lease which will be referred to as the "Sweeney Lease." This lease named Muller as lessee and was obtained at a cost substantially less than the amount thereto expended by the parties for the royalty purchases. Upon being informed of Muller's purchase of the "Sweeney Lease" Knox and Hayes inquired of Muller why he had not advised them of the purchase and why they had not been asked for payment for their interest. Thereupon Muller advised them that this matter would be discussed at a later date. As activity in the area was then dormant, Knox and Hayes did not again question Muller concerning this lease for several months.

Early in 1959 Knox again inquired about the "Sweeney Lease" and Muller again advised that the matter would be discussed later. It was the practice of these parties to handle these matters verbally. Royalties and leases were placed in the name of one of the parties with the understanding that the interest of all parties would in due time be properly assigned. It is alleged that this

practice and custom is common in the oil and gas industry and therefore Muller's intentions as to the "Sweeney Lease" were not seriously questioned.

Thereafter on December 10, 1959, Muller sold the "Sweeney Lease" which stood in his name to Louisiana Gas Corporation for $900,000.00. Knox and Hayes then made demand upon Muller for their one-third interest in the proceeds from the sale of the lease. Muller denied their claim and refused to pay their interest or to account to them for any proceeds from the joint adventure entered into in October 1953.

The petition alleges fraud and bad faith on the part of Muller in his refusal to pay Knox and Hayes their share of the profits and in that he induced them to forego formal demand until he had an opportunity to transfer the "Sweeney Lease" to third parties.

Muller is further alleged to have breached the contract of joint adventure in failing to account to Knox and Hayes for the profits realized from their joint enterprise, for the parties had agreed that all available royalties and leases in the "Castille Area", which includes the "Sweeney Lease", would be obtained so long as the $60,000.00 was not exceeded and that the costs and profits would be equally divided among them. For these reasons plaintiffs allege they are entitled to specific performance of the joint adventure agreement relating to the division of profits and to an accounting of all profits and to receive one-third of all profits resulting from the joint adventure, specifically those profits derived from the "Sweeney Lease." Then follows the prayer for the payment to each of plaintiffs the sum of $300,000.00, or, alternatively, for an accounting of the profits from the "Sweeney Lease."

Plaintiffs' demand for the accounting is met by the defendant's exception of no right or cause of action. In support of his exception defendant contends that because the agreement of joint adventure is verbal, parol evidence cannot be used to prove that agreement, for the object of the agreement was to acquire and to dispose of immovable property (oil, gas and mineral leases and royalties) and to share in the profits therefrom.

The premise of this contention is in part the proposition that by Act 205 of 1938, as amended by Act 6 of the Second Extraordinary Session of 1950 (LSA–R.S. 9:-1105), oil, gas and mineral leases were classified as real rights and incorporeal immovable property; this provision being further clarified by the 1950 amendment "as substantive as well as procedural so that the owners of oil, gas and other mineral leases and contracts within the purpose of this Section shall have the benefit of all laws relating to the owners of real rights in immovable property or real estate." It

is noted in this connection that while the rights actually obtained by the mineral lessee are not real rights in the sense that the lease is a charge and burden upon the land, as is a servitude, the legislature has seen fit to place owners of mineral leases on the same level as owners of land, by conferring upon them "the benefit of all laws relating to the owners of real rights in immovable property or real estate." Reagan v. Murphy, 235 La. 529, 105 So.2d 210 (1958). It follows from this, according to defendant's contention, that plaintiffs cannot assert title to the "Sweeney Lease" for the owners of that lease are entitled to require that an agreement affecting its title be in writing. LSA–Civil Code, arts. 2275, 2440. This being a "benefit" accorded to owners of real property to which a mineral lessee is also entitled. See Ingolia v. Lobrano, 244 La. 241, 152 So.2d 7 (1963).

He asserts, too, that a joint adventure is legally a partnership and, therefore, plaintiffs cannot prove that agreement, for Article 2836 of the LSA–Civil Code requires that if any part of the stock of the partnership consists of real estate, it must be in writing and the mineral lease referred to is "stock" of the partnership.

■■ It is conceded that plaintiffs have alleged the existence of a verbal contract of joint adventure. Also, there is no dispute between plaintiffs and defendant that a joint adventure can properly be defined as a special combination of two or more persons who jointly seek a profit through a specific adventure without any partnership or corporate designation. McCann v. Todd, 203 La. 631, 14 So.2d 469 (1943); Emerson v. Shirley, 188 La. 196, 175 So. 909 (1937); Ault & Wiborg Co. of Canada v. Carson Carbon Co., 181 La. 681, 160 So. 298 (1935); Daily States Pub. Co. v. Uhalt, 169 La. 893, 126 So. 228 (1930). We think it is true, also, that the relationship of joint adventure such as the one in the instant case is fiduciary in character [1] and one adventurer cannot acquire and retain for himself [2] any secret advantage in connection with the enterprise.[3]

■ In this State all things that are not forbidden by law, may legally become the subject of, or the motive for contracts. LSA–Civil Code arts. 1764, 1885. This authority would permit the conclusion that

---

1. Horne v. Holley, 167 Va. 234, 188 S.E. 169 (1936); Goldman v. Pryor, 172 Wis. 462, 179 N.W. 673 (1920); Selwyn & Co. v. Waller, 212 N.Y. 507, 106 N.E. 321, L.R.A.1915B, 160 (1914); 25 Tul.L. Rev. 382 (1951).
2. Compare Shoufe v. Griffiths, 4 Wash. 161, 30 P. 93 (1892), with Dickinson v.

Patterson, 160 U.S. 584, 16 S.Ct. 373, 40 L.Ed. 543 (1897).
3. Tufts v. Mann, 116 Cal.App. 170, 2 P. 2d 500 (1931); Harm v. Boatman, 128 Wash. 202, 222 P. 478 (1924); Menefee v. Oxnam, 42 Cal.App. 81, 183 P. 379 (1919). See also, 25 Tul.L.Rev. 382 (1951).

a contract of joint adventure, though assimilated to that of a partnership, may be formed without adopting all attributes of the partnership relation. It would permit such a relationship to have as its object the profits to be derived from an enterprise. As this suit has for one of its objects a demand for an accounting for profits realized from a joint adventure, we see no reason why plaintiffs have not stated a cause of action in that respect. See Ingersoll Corporation v. Rogers, 217 La. 79, 46 So.2d 45 (1950).

In Warnock v. Roy, 217 La. 224, 46 So.2d 251 (1950), this court held in answer to a similar contention involving a suit for an accounting for proceeds derived from production from a gas well that " * * * plaintiff's suit was also for an accounting and for a personal judgment against the defendant for any amount that may be shown to be due him as a result of such accounting, and that all claims to be recognized as the owner of a real right were abandoned." On the basis of this declaration the court ordered the defendant to file a complete accounting of the proceeds from the production of the well.

It was also pointed out in the Warnock case that:

"[T]he true intent and interest of the parties was, not that Warnock should thereby acquire interest in the sense of title, in the well itself, but rather

an interest in the financial returns and profits from the well."

The foregoing language points out the gravamen of the instant case.

It is important to observe that the same situation exists in the case at bar for plaintiff has abandoned any claim to an interest in the lease now held by Louisiana Gas Corporation, the assignee of Muller; that lease, therefore, cannot be and is not affected by this suit.

■ This suit has not as its object the assertion of an interest in an oil and gas lease, nor does it have as its object an attack upon the title to such a lease. Plaintiffs' suit has for its object an accounting for the profits resulting from the joint adventure, which is a personal contract. Their success is not dependent upon proof that they had an interest in the "Sweeney Lease" in the sense that they had title thereto. Success in their cause depends upon whether they can prove that there was a joint adventure and that as a result thereof profits were derived which were contemplated to be divided among the joint adventurers. Like in partnership, to which the relationship of joint adventurers is sometimes assimilated, joint adventurers do not have to be co-owners of property used in the business of the joint adventure; the property used in the joint adventure may be owned by only one of the joint adventurers and

its use only devoted to the purposes of the joint adventure. O'Neal, An Appraisal of the Louisiana Law of Partnership, 9 La.L. Rev. 307, 359. See also pp. 333, 488.

The case of Wampler v. Wampler, 239 La. 315, 118 So.2d 423 (1960) is sound authority for the position that when the suit is not between the parties to the contract of assignment of an oil lease, but where the controversy is between one of these parties in whose favor the assignment is given and a third person, "the parol evidence rule is without relevance as it applies only '* * * where the enforcement of an obligation created by the writing is substantially the cause of action.'" In that case the court approved the statement of the law as contained in 32 C.J.S. Evidence § 1011, to this effect:

"The rule against the admission of parol evidence to vary or contradict a written contract does not apply where the writing as to which it is sought to introduce the evidence is collateral to the issue involved and the action is not based on such writing."

Applying the rule of the Wampler case to the case at bar, we do not read the plaintiffs' petition to mean that the obligation they seek to enforce is created by the writing which is the "Sweeney Lease." To the contrary that lease is collateral to the issue. The prime issue being for an accounting under the joint adventure which

is verbal, and it is that joint adventure agreement which is "substantially the cause of action." Another case would be presented if plaintiffs sought to be declared the owner of an interest in the "Sweeney Lease."

Thus defendant's contention is inapplicable that plaintiffs cannot prove their title to the "Sweeney Lease" by parol evidence based upon Article 2275 of the LSA–Civil Code which requires "Every transfer of immovable property must be in writing * * *" and Article 2276 which states that "Neither shall parol evidence be admitted against or beyond what is contained in the acts * * *."; and Article 2836 which provides that "If any part of the stock of this partnership consist of real estate, it must be in writing, and made according to the rules prescribed for conveyance of real estate * * *." The contention is inapplicable because title to the "Sweeney Lease" is not involved.

In Emerson v. Shirley, 188 La. 196, 175 So. 909 (1937) this court said:

"The rule which forbids the proving of title to real estate by parol evidence is not applicable to evidence which is offered for some other purpose, for which it is relevant and competent, and which relates only collaterally and unavoidably to, and without establishing or affecting, the ownership of real estate. Wigmore on Evidence. (2d

Ed.) Vol. 2, p. 863, § 1252; 22 C.J., p. 978, § 1224; p. 987, §§ 1230, 1231; p. 994, § 1249." See also Dejean v. Whisenhunt, 191 La. 608, 186 So. 43 (1938).

With the Emerson case as a guide we see that the evidence, which plaintiff will be permitted to introduce under the allegations of their petition, will establish no title in, nor interest for, them to the "Sweeney Lease"; that evidence will not affect title to the "Sweeney Lease." It can only serve to establish an agreement of joint adventure and their entitlement to a share of the profits resulting therefrom. It is only the fact that the "Sweeney Lease" was obtained by Muller and assigned for a profit which is pertinent to plaintiffs' cause; that Muller did own that lease relates only collaterally to the right to recover a part of the profits from the contract of joint adventure. It is not the fact that plaintiffs had an interest in the lease which is necessary to their recovery. They need only prove that Muller acquired it and made a profit and that the profit derived therefrom was to be divided under the joint adventure agreement. Incidentally, (and for the purpose of the exception of no right or cause of action we consider that fact undisputed) Muller did acquire and sell the "Sweeney Lease" at a profit and this fact bears upon the question of whether a profit was derived from the joint adventure.

Nor do we read the petition to mean that plaintiffs need to prove they were entitled to an assignment of an interest in the lease, for they claim no interest therein. Their claim is for money profits derived from the joint adventure, from whatever source derived consonant with the object of the joint adventure, which was an enterprise for profits to be derived from oil and gas leases and royalties brought about by pooling of their knowledge, know-how and capital. What plaintiffs have set forth in their petition is that they are claiming their share of the profits from the "Sweeney Lease" not by virtue of any interest in the title to that lease, but by virtue of the joint adventure agreement. Hence there is no controversy between the parties here or the Louisiana Oil and Gas Co. as to the title of the "Sweeney Lease", the substantial basis for recovery is the joint adventure agreement.

In summary it may be said that plaintiffs' entitlement to the accounting and profits flow from the joint adventure agreement and not as a result of their ownership of an interest in the "Sweeney Lease."

The allegations of the petition leave no doubt that Muller obtained valuable information from one of his coadventurers and used it for his own advantage in violation of the contract, derived a profit such as was contemplated by the joint ad-

venture and refuses to account to his coad-venturers.

For the reasons herein assigned, the judgment of the trial court is reversed, the exception of no right or cause of action filed herein is overruled, and this case is remanded to the district court for further proceedings according to law.

## ON REHEARING

HAMITER, Justice.

A rehearing was granted in this case so that we might reconsider our holding (on an exception of no cause of action) that the plaintiffs had stated a cause of action in their demand for the recovery of profits derived from the purchase and sale of a certain oil and gas lease.

The facts, as set forth in the opinion of the Court of Appeal (146 So.2d 176, 195) when certifying the legal questions involved, are as follows: "Under the allegations of the petition of plaintiffs Hayes and Knox, they and the defendant Muller entered into an *oral agreement of joint adventure,* pursuant to which each co-adventurer advanced twenty thousand dollars to be used for the purchase of royalties and leases in a certain area in Acadia Parish. Pursuant to this agreement, the defendant Muller obtained the Sweeney mineral lease affecting certain property in Acadia Parish, which lease was obtained by Muller in his own name only.

"Six years later Muller sold this Sweeney lease for nine hundred thousand dollars to the Louisiana Gas Corporation.

"By this suit, the plaintiffs pray for judgment and their share of the profits realized from the sale of the Sweeney lease, or in the alternative that the defendant be ordered to make an accounting to them of all profits derived from the joint adventure, including those derived from the sale of the Sweeney lease." (Italics ours)

The basic legal question, as certified to us by the Court of Appeal, is this: "Where Co-adventurers Muller, Hayes, and Knox enter into an oral agreement of joint adventure for each to contribute an equal sum to purchase oil leases and royalties, and pursuant thereto an oil and gas lease is obtained in Co-adventurer Muller's name only and Muller subsequently sells this lease to a third person at a profit, are Hayes and Knox permitted to use parol evidence to prove their original agreement so as to establish their right to recover their share of profits in a suit for money judgment against Muller, wherein no claim is made against the title held by the third person?"

It is our opinion now that we were in error in holding originally that plaintiffs had stated a cause of action for an accounting of the profits realized from the alleged joint adventure.

At the outset it is clear that in demanding shares of the profits the plaintiffs must

prove the existence of a contract between them and the defendant to purchase the mineral lease for the benefit of all three. Too, admittedly, the only available evidence here (in proof of such agreement) is verbal.

LRS 9:1105 states: "Oil, gas, and other mineral leases, and contracts applying to and affecting these leases or the right to reduce oil, gas, or other minerals to possession, together with the rights, privileges, and obligations resulting therefrom, are classified as real rights and incorporeal immovable property. They may be asserted, protected, and defended in the same manner as may be the ownership or possession of other immovable property by the holder of these rights, without the concurrence, joinder, or consent of the landowner, and without impairment of rights of warranty, in any action or by any procedure available to the owner of immovable property or land. This Section shall be considered *as substantive* as well as procedural *so that the owners of oil, gas and other mineral leases and contracts* within the purpose of this Section *shall have the benefit of all laws relating to the owners of real rights in immovable property or real estate * * *"* (Italics ours)

■ And in Ingolia v. Lobrano, 244 La. 241, 152 So.2d 7, we held recently, with reference to such statute, that " * * * applicable to the mineral leases and con-tracts is the same requirement of written testimonial proof that governs the transfer of immovable property." In other words the parol evidence rule applies to transactions involving mineral leases, just as it does to those affecting real estate.

It is the contention of these plaintiffs that the parol evidence rule is not applicable, since title to the lease will not be affected (it having been transferred to Louisiana Gas Corporation); that they are merely seeking to recover profits derived from Muller's sale. Their claim to such profits, by the explicit allegation of their petition, rests on a *verbal agreement* that the property would be bought and sold for their benefit; and that the defendant, in a breach of this agreement, handled the lease in his name and is retaining the profits derived therefrom.

■ The important question then is: Can the plaintiffs show such an agreement by parol? We think not. The parol evidence rule has been applied by this court not only in cases involving contracts which directly affect title to realty but also in others where the litigants merely sought to derive benefits growing out of verbal agreements relating to the sales of immovable property.

Thus, in the early case of Patterson v. Bloss et al., 4 La. 374, the plaintiff alleged a verbal agreement under which he was to sell to the defendants certain property, with

respect to which they refused to take title. He did not seek specific performance. Rather, he sought damages for the failure to comply with the contract. The court, in rejecting parol evidence to show the agreement, said: "He who claims damages for the inexecution of a contract, must prove that it was actually entered into, in the same manner as if it required the specific performance of it." From which holding it would logically follow that he who seeks an accounting of profits growing out of a joint adventure agreement respecting the purchase and sale of a mineral lease must prove by written evidence that the contract was actually entered into "in the same manner as if it required specific performance of it." In this connection it is conceded that, in the instant case, the parol evidence rule would have prevented plaintiffs from enforcing the agreement to assign to them their proportionate interests in the lease if it were still in the defendant's name.

Whether it is permissible to prove a verbal contract such as is sought to be enforced here rests on the same principles enunciated in the early cases of the jurisprudence which have been consistently adhered to. In those cases we held that a plaintiff cannot show an oral agreement to purchase property for him, and enforce the contract when it has been fraudulently violated (by acquisition in defendant's name), despite the argument made therein

that the evidence did not constitute an attack on the title of the defendant but was merely an attempt to profit from and through such title. See Hackenburg v. Gartskamp, 30 La.Ann. 898, Perrault v. Perrault et al., 32 La.Ann. 635, Hanby v. Texas Company, 140 La. 189, 72 So. 933, Scurto v. LaBlanc, 191 La. 136, 184 So. 567. Moreover, so zealous has the court been to guard against any deviation from this rule that it has held that even forced heirs (whose rights are usually safeguarded at the expense of other established rules) are denied the right to prove such an agreement by parol even though it interferes with their legitime. See Eberle et al. v. Eberle, 161 La. 313, 108 So.2d 549.

In Prescott et al. v. Prescott et al., 170 La. 233, 127 So. 611, the court had before it for consideration the almost identical issue presented here, and we think that the case is controlling of this controversy. Therein, the plaintiffs attempted to show by parol that one of the defendants (a brother) had acquired certain property in his own name, but that in doing so he was acting as the agent of the mother and used money which had been entrusted to him to invest for her. Prior to his mother's death such defendant had sold the property and retained all of the funds derived from the sale. By their action plaintiffs (as heirs of their mother) sought to obtain an accounting of the revenues of such property received by that defendant while it was still

in his name and to obtain their share of the sale price which had been paid to him. The court (in sustaining an exception of no cause of action) held that since plaintiffs were debarred by the parol evidence rule from showing title in their mother (rather than in the defendant) they could not be heard to demand an accounting of either the revenues of the property or *any part of the proceeds derived from the sale thereof*.

The plaintiffs herein contend that a re-hearing was granted in the Prescott case, and that in the opinion on rehearing the court changed its original decree so as to reserve to the plaintiffs their right to demand an accounting. To begin with, a rehearing was not granted. The so-called opinion on rehearing was in fact a *per curiam on application for rehearing,* the court noting therein that "with this explanation and declaration, the application is refused". In the per curiam, also, the court observed that, in their application for a rehearing, the plaintiffs had urged that the decision would be res judicata as to other claims against the defendant growing out of the succession proceedings. (The brief on the application is explicit that these claims concerned agreements between the mother and son not relating to real estate, as well as to monies received by him from property standing in the name of the mother.) The court then explained that such claims were not affected by its decree; rather, affected was only the claim of the plaintiffs with reference to the property purchased with the mother's funds by the defendant in his own name.

In examining the briefs in the record of the Prescott matter, supra, we find it interesting to note that the plaintiffs there made virtually the same argument as is presented here by these plaintiffs. Thus, they urged that the defendant had "manipulated the whole affair in a manner violative of his fiduciary tie so as to derive a personal profit from his mother's business other than legitimate compensation"; that the cause of action "is in effect a demand upon defendant to account * * * for profits which he derived from the tract carried in his own name"; that although the defendant contended that the demand was an attempt to vest title in the decedent by parol evidence, "to the contrary *petitioners affirm the title in the present vendees, and merely seek to require the agent to account for undue profits";* and that "even though the title to real estate were in part incidentally involved, the agent cannot hide behind any such technical smoke screen to avoid the major duty of *rendering an account,* and surrendering to the estate any *personal profits* derived from the manipulation of his mother's business." This view of the plaintiffs' cause of action was totally rejected by the court, on the basis that the proffered parol evidence was inadmissible, when denying them the relief sought. (Italics ours)

Again in Carter et al. v. Loeber et al., 177 La. 444, 148 So. 673, the court refused to allow parol evidence to show that property purchased at a foreclosure sale in the name of one person inured to the benefit of another, such purchase allegedly having been made in violation of a fiduciary agreement, even though as an alternative demand the plaintiffs sought a money judgment *only for the value of the property.*

By virtue of the provisions of LRS 9:-1105, particularly since thereunder this defendant is entitled to the same advantages of the parol evidence rule as if the alleged joint adventure contract had dealt with real estate, the holdings and doctrine of the above discussed cases are equally applicable to the instant litigation.

To reach any result other than that heretofore announced would open the door to parol evidence in every case wherein a litigant seeks to recover only benefits flowing from the realty affected. As an illustration, suppose that this defendant still retained the title to the lease which had greatly increased in value. Could the plaintiffs, by a parol showing of the joint adventure, successfully make a demand for their shares of the increase—a demand that would not affect the title any more than one for their shares of the profits realized by a sale? Under plaintiffs' theory they could. But under our jurisprudence and statutory law they could not.

The following observations, to which we subscribe, were offered by Judge Frugé in his dissenting opinion in this cause (146 So. 2d 186, 193) when it was on the original hearing in the Court of Appeal: "Stripped of all its frills, plaintiffs' contention that they are simply attempting to enforce a personal agreement for money is simply this: They would have this Court hold that so long as one retains title to a mineral lease he is protected by the parol evidence rule, but when he sells it, he loses that protection and is then subject to an accounting suit where the same parol evidence would be admitted because then only a claim for money would be involved. This would not only be bad law, but the absurdities of such a holding from a practical standpoint are obvious; particularly would this be true with respect to mineral leases having highly fluctuating values. If that were the law, claimants under the 'verbal agreement' (particularly if they outnumber the record owner of the lease) would thereby be permitted to sit idly by while the true owner assumes all financial risks of maintaining the lease and then descend on him with a 'preponderance' of verbal testimony when he is fortunate enough to realize a profit from the sale of that contract. This is the very type of situation that the framers of the Louisiana Civil Code wisely decided to forbid in the interest of public policy."

The cases principally relied on by us in our original opinion (Emerson v. Shirley

et al., 188 La. 196, 175 So. 909, Warnock v. Roy, 217 La. 224, 46 So.2d 251, and Wampler v. Wampler, 239 La. 315, 118 So. 2d 423), and on which the plaintiffs place much emphasis, are clearly distinguishable from the instant cause. In the Warnock case the agreement between the parties did not concern the buying and selling of a lease, or royalties payable under a lease, but rather a joint adventure to drill a well, under the terms of which the parties were to receive a proportion of the financial returns of the well. As the court pointed out an interest in the title to the well could not have been involved because neither of the parties owned the leasehold and neither was to actually drill the well. Moreover, the agreement was not proved by parol but by written correspondence.

In Wampler v. Wampler, supra, the plaintiff (the divorced wife of the defendant) was seeking to be recognized as a co-owner of a certain lease which, she claimed, had been been purchased by her husband prior to the dissolution of the marriage. The husband introduced parol evidence to show that the lease had not been confected until after the divorce. Clearly this was not an attempt by him to establish title by parol in someone who had never had title, nor was her objection thereto based on that theory. She objected to the evidence as tending to vary the terms of the written assignment of the lease. Our holding was that, since the suit was not on the assignment between the contracting parties but was a controversy between one of the parties (in whose favor the assignment operated) and a third party who was his privy, the parol evidence rule was inapplicable.

Emerson v. Shirley et al., supra, did not involve an attempt by a litigant to show title by parol in one who had never had it, or to afford him benefits flowing from an oral agreement to acquire a title for him, as is attempted in the instant case. Therein, the plaintiff had owned a record title to a fractional royalty interest. He sold that interest to a defendant co-owner. His cause of action was one to *annul such sale* on the ground of fraud and his being so intoxicated at the time he transferred his interest that he had a temporary derangement of the intellect which prevented his understanding of the nature of the transaction. Either one of these grounds *for annulling a contract* of sale has long been recognized as what might be considered an exception to the parol evidence rule relative to authentic acts. The cases involving such rule of law are thoroughly discussed in Scurto v. Le-Blanc, supra.

As a basis for his allegations of fraud the plaintiff in the Emerson case argued that there existed between him and his vendee a fiduciary relationship to such an extent that the latter owed to him a duty (beyond that existing in the ordinary co-ownership relationship) to disclose pertinent facts about the property before purchasing his

interest.. The sole purpose of the introduction of the parol evidence was to show such fiduciary relationship and the resulting duty, and not that of enforcing an agreement so as to give him any benefits flowing therefrom.

We think that the above discussion suffices to distinguish Emerson v. Shirley, supra, and to show that it does not support the position of these plaintiffs. However, if we are in any way mistaken about that, we also point out that it was decided in 1937—or long prior to the legislative enactment placing mineral leases on the same basis as realty insofar as the benefits of the parol evidence rule are concerned.

Consequently, we are of the opinion that plaintiffs cannot prove the alleged parol joint adventure agreement of the parties. And since they cannot show such contract, there is no basis for their demand for an accounting of profits received by the defendant.

For the reasons assigned the judgment of the district court, maintaining the exception of no cause of action and dismissing the suit, is reinstated and made the judgment of this court. All costs are to be paid by plaintiffs. The right to file an application for a rehearing is reserved to the latter.

SUMMERS, Justice (dissenting from judgment and decree on rehearing).

The real basis for the opinion on rehearing is that plaintiffs' claim for an accounting for profits "rests on a verbal agreement that the property would be bought and sold for their benefit; and that the defendant, in a breach of this agreement, handled the lease in his name and is retaining the profits derived therefrom." Hence, the opinion continues, "Can the plaintiffs show such an agreement by parol?" And the opinion concludes that such an agreement cannot be shown by parol.

What this opinion on rehearing fails to recognize is what plaintiffs have sought so carefully to stress in all of their arguments and briefs before this court. It is the fact that the plaintiffs have alleged, among other things, that the basis of the joint adventure contract was profits to be derived from the pooling of knowledge, know-how and capital in oil and gas royalty and leasing transactions. The acquisition of title in Muller's name, or, as a matter of fact, in any other person's name, was only incidental, collateral to and a means of accomplishing the main object of the joint adventure agreement which was the dividing of profits to be derived ultimately as a result of the pooling of their knowledge, know-how and capital. At the time when the parties entered into the agreement there was no meeting of minds on the acquisition of any particular lease or royalty rights. What the parties did clearly understand, however, is that

the profits resulting from their endeavors would be equally divided.

In Byrd v. J. F. Meeks Lumber Co., Inc., 158 So. 701 (La.App.1935), parol evidence was admitted to prove a joint adventure (called a trust) when plaintiff was seeking an accounting from a transaction involving real estate and the court properly observed:

"The opinion rendered by us in this case shows that *title to real estate came into play only incidentally to the demand against defendant for an accounting* as her agent for money received which should have gone to her benefit in the transaction.

"If the principal could not establish by parol the obligation of the agent or fiduciary to account for money received for his benefit, because title to real estate happened to be involved, the agent would, as remarked by counsel for plaintiff in his brief, 'have civil immunity to do whatever he pleased with his principal's property and money in deals involving real estate.'"

It should be kept in mind that the plaintiffs' petition does allege that there was an agreement to buy leases and transfer ownership therein to the parties to the joint adventure. And it must be conceded that these allegations are subject to the objections which defendant has advanced, insofar as any claim to an interest in those leases is concerned. Plaintiffs do not and

cannot rely upon those allegations to sustain their cause of action. Rather, plaintiffs do rely and can rely upon the other allegations of their petition to the effect that they entered into a joint adventure agreement to seek profit from the combination of their knowledge, know-how and capital and they are entitled to an accounting from their co-adventurer on that basis insofar as it does not affect title to real estate. (See Ingersoll Corp. v. Rogers, 217 La. 79, 46 So.2d 45 (1950) from which it can be seen that if the petition does not state a cause of action in some respects it will not be subject to an exception of no cause of action, if it does, in fact, set forth a cause of action in other respects.)

It was my opinion originally—and nothing has been advanced in the first application for rehearing or in the opinion on rehearing to lessen that view—that this is a classic case to invoke the joint adventure doctrine if it exists in this State at all. If the joint adventure doctrine is a part of our law, it is so because it supplies a device to do equity when equity is clearly due. And that, in essence, is what is sought here—*an accounting for breach of a fiduciary relationship which will have no effect on any title whatsoever*. This is a question which the legislature has not governed by any enactment which has been brought to my attention. The field then is one in which equity should properly be invoked. LSA–Civil Code, art. 21.

Furthermore, it will not do to say that the joint adventure agreement is controlled by all of the rules and restraints applicable to partnerships, for if this is so there was no cause to bring the doctrine of joint adventure into our law in the first place.

On the basis of the allegations which are contained in plaintiffs' petition, including fraud on defendant's part, it is difficult to accept the conclusion that plaintiffs have no remedy under our law.

I adhere to the views expressed in the original opinion.