SCHOTT, Judge.
Plaintiff brought this suit on an1 agreement under which defendant, Dearie, a real estate broker, in order to induce decedent, John A. De Grey, to make a real estate purchase, guaranteed that De Grey would realize a profit of $10,000 within ninety days of the sale. The agreement pledged certain commissions due Dearie by defendant Malone as security for the $10,000. From a dismissal of her suit plaintiff has appealed.
The trial judge held that the agreement was made but within ninety days after De Grey took title an offer was made to De Grey which would have provided him with a profit in excess of $17,000, that De Grey declined the offer in the hope of obtaining a more favorable offer, and that “by making it possible for De Grey to earn $17,148 within ninety days defendants met their obligations.”
Dearie testified that he received an offer to sell certain' real estate and he found five potential purchasers for the three parcels making up the property. He was to take title to all of the property in his own name and would thereafter transfer the parcels to the five purchasers. One of the parcels was to be purchased for $96,000 by John A. De Grey together with another party. On the day of the act of sale, when Dearie had already taken title to the property, De Grey’s potential co-purchaser informed Dearie that he was backing out of the transction and would not take title, whereupon Dearie was informed by De Grey that he could not take the whole parcel alone. Dearie then informed the other three purchasers of these developments, whereupon they informed Dearie that they would not go through with their agreements to purchase the other parcels making up the whole of the property which now stood in Dearie’s name unless Dearie could come up with the $46,000 required to complete the purchase by the following morning. Dearie found still another party who agreed to join with De Grey and the other three purchasers to complete the transaction. At this point De Grey informed Dearie that he had changed his mind and would not go through with the transaction, whereupon Dearie told De Grey that he could make $10,000 on the property within ninety days. At the request of De Grey, Dearie gave him a letter containing the following:
“To assure good faith, and as a guarantee that you would make a minimum profit of $10,000 within 90 days. This profit would be above any interest or commission or cost on the above investment. I will pledge all of my commission that I have coming on the attached letters. One being the lease between Shell Oil Company and John Malone .
“In addition to the above paragraph, I further agree to pay the interest that it cost you obtain the $46,300.00 to take title, if I fail to comply with the above profits that I have stated in this letter.”
Dearie further testified: Within ninety days after the execution of this agreement Dearie produced one John Derbes of River Parish Investment Company, who verbally offered to purchase the property from De Grey at a price which would have provided *797 a net profit to De Grey in excess of $10,000. In response to this offer De Grey replied that he would rather have cash for the property and that he knew the property was going up in value. Dearie continued in his efforts to sell the property for De Grey, who died on December 24, 1970, and for plaintiff, now the administrator of her husband’s succession, until September 26, 1972, when the property was sold for a price which produced a net return to plaintiff of over $17,000. The sale was made as a result of Dearie’s efforts.
John Derbes testified in corroboration of Dearie’s testimony that Dearie approached him about De Grey’s property, that he did make a verbal offer to purchase the property from De Grey for $130,000, and that De Grey refused the offer saying that he thought he could get more money for the property.
In this Court plaintiff contends that defendants failed to carry their burden of proof to support the affirmative defense that their obligation under the guaranty had been extinguished. She further contends that the offer from Derbes was legally insufficient to meet defendants’ obligation because it was not written.
In support of her first contention plaintiff points to a discrepancy in the judgment of the trial court, indicating that the judge below confused the amount of profit ultimately realized by De Grey with that which he would have realized had he accepted the offer made in June, 1970. She argues that Dearie’s conduct subsequent to the period of ninety days after March 24, 1970, such as his letter to plaintiff’s attorney recognizing the guarantee agreement and stating that he was instructing Malone to pay the commissions to plaintiff’s attorney and his payment of $350 on account of the agreement was wholly inconsistent with his testimony of the verbal offer submitted by Derbes.[1] She points to discrepancies in the testimony of Derbes as supportive of her position. And, finally, she insists that there is no clear evidence that the offer rejected by De Grey would have turned him a $10,000 profit even if the offer was for $128,000-$130,000 as testified to by Dearie.
All of these objections must be considered in the light of the question of whether the evidence taken as a whole makes it more probable than not that Dearie produced the offer for De Grey during the ninety day' period. The trial judge made a credibility call in favor of Dearie and Derbes, and we do not find that the objections and inconsistencies noted by plaintiff compel a rejection of their testimony in substance. The issue is narrow. Was such an offer made? We conclude that the evidence does preponderate to that effect, that is, it is more probable than not that an offer of at least $128,000 was made before June 24, 1970, and that this offer, if accepted, would have yielded De Grey a profit of over $10,000 since he put up $46,000 and would have received $64,000.
As to plaintiff’s second contention that the offer made by Derbes was not legally sufficient to comply with the guaranty agreement because it was not in writing she relies primarily on Hayes v. Muller, 245 La. 356, 158 So.2d 191, in which the following was said:
“The important question then is: Can the plaintiffs show such an agreement by parol? We think not. The parol evidence rule has been applied by this court not only in cases involving contracts which directly affect title to realty but also in others where the litigants merely *798 sought to derive benefits growing out of verbal agreements relating to the sales of immovable property.”
Clearly the foregoing has no application to the instant case since defendants here are not attempting to establish an agreement relating to the sale of De Grey’s property but rather than an offer was made available to De Grey which he summarily dismissed. The distinction between the cases is highlighted by the following reasoning of the Court in Hayes v. Muller:
“To reach any result other than that heretofore announced would open the door to parol evidence in every case wherein a litigant seeks to recover only benefits following from the realty affected. As an illustration, suppose that this defendant still retained the title to the lease which had greatly increased in value. Could the plaintiffs, by a parol showing of the joint adventure, successfully make a demand for their shares of the increase — a demand that would not affect the title any more than one for their shares of the profits realized by a sale? Under plaintiffs’ theory they could. But under our jurisprudence and statutory law they could not.”
Defendants do not seek to recover benefits from the realty but only to show that a condition occurred which operated to relieve Dearie of an obligation to pay De Grey $10,000. When he produced the offer from Derbes which De Grey declined because he felt he could make more than $10,000 at a later date it would have become an exercise in futility for Dearie and Derbes to submit a written offer to the same effect.
LSA-C.C. Art. 2045 provides as follows:
“The dissolving [resolutory] condition is that which, when accomplished, operates the revocation of the obligation, placing matters in the same state as though the obligation had not existed.”
This is precisely what occurred between De Grey and Dearie. The latter incurred an obligation to pay the former $10,000 with the resolutory condition that if Dearie found a prospect to buy the property from De Grey at a price which would net De Grey $10,000, Dearie was no longer obligated. Dearie found the prospect and De Grey decided not to avail himself of the opportunity to pick up the profit. Plaintiff’s position that the failure of Dearie to obtain a written offer was a failure in proof of the resolutory condition agreed upon is wholly inconsistent with his conduct of informing Dearie in effect that he was simply not interested in selling the property for the price Derbes offered notwithstanding the fact that he could have made the $10,000 profit.
Finally, there is merit to defendants’ contention that plaintiff is equitably estopped from claiming the $10,000 under the circumstances of this case. After the ninety days passed De Grey kept the property and eventually made a profit in excess of $10,000. De Grey’s position would have been altogether different had he demanded the $10,000 and tendered the property back to Dearie on the ninety-first day after his acquisition, but his conduct was entirely consistent with the thought he expressed to Dearie and Derbes when he received their offer. He was not satisfied to pick up the profit at the time, he hoped to earn more, he therefore relieved Dearie of his obligation and in fact did earn more than he was guaranteed to earn in the first place.
Accordingly, the judgment appealed from is affirmed at plaintiff’s cost.
Affirmed.

. Dearie explained that he was ignorant as to his legal position and he “was getting constant pressure” from plaintiff through her nephew, an employee of Dearie, to send money on the agreement. Dearie also testified that he did considerable business with plaintiff after her husband’s death including appraisals of succession property and sales for her.