401 So.2d 680 (1981)
GUY SCROGGINS, INC., Plaintiff and Appellant,
v.
EMERALD EXPLORATION, et al., Defendants and Appellees.
No. 8333.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1981.
Mouton & Jeansonne, Patrick J. Briney, Lafayette, for plaintiff appellant.
Adcock, Horne, Caldwell, Coleman & Duncan, Jack C. Caldwell, Franklin, Plauche, Hartley, Lapeyre & Ottinger, Patrick S. Ottinger, Voorhies & Labbe, Richard D. Chappuis, Onebane & Associates, Robert L. Cabes, Lafayette, for defendants-appellees.
Before CULPEPPER, FORET and LABORDE, JJ.
CULPEPPER, Judge.
Plaintiff seeks specific performance of a June 6, 1973 agreement and a Joint Operating Agreement which would entitle him to share in production from all leases covered thereby. He also seeks an accounting for production from the leases. In the alternative, plaintiff prays for 15 million dollars in damages for loss of past, present and future income from the leases. Made defendants are Emerald Exploration, a partnership (now dissolved) consisting of Alfred Lamson, *681 Sam Bennett and Frank Danna, and the said partners individually, and Edwin L. Cox and Dow Chemical USA. All defendants filed exceptions of no cause or right of action on the grounds that plaintiff had failed to allege any written contracts under which he is entitled to the relief sought. The district court found that plaintiff's petition, together with the annexed documents, failed to state a cause or right of action. However, as discovery had previously been denied by the court, plaintiff was allowed thirty days in which to amend his petition so as to state a cause or right of action. Plaintiff then filed his second supplemental and amending petition, to which exceptions of no right or cause of action were also filed by all defendants. From a judgment of the district court sustaining the exceptions of no cause or right of action, plaintiff appeals.
The decisive issue is whether plaintiff has alleged a cause of action against the defendants for specific performance or, in the alternative, damages for loss of income.
Plaintiff endeavors, through a complex exchange of letter-agreements and documents, to establish a working interest in the leases and the right to become a signatory party to a joint operating agreement signed on August 27, 1973 by the defendants, Emerald, Dow and Cox. The sequence of events are set forth chronologically in plaintiff's second supplemental and amending petition as follows:
"3.
"By instrument dated October 1, 1971, J. Hus Hawkins acquired an oil, gas and mineral lease from Lignum Oil Company covering acreage in Section 37, Township 9 South, Range 9 East, with other lands.
"4.
"By separate instrument of the same date, Hawkins acquired an oil, gas and mineral lease from Bayou Bouillion Corporation, covering substantially the same acreage as that affected by the Lignum lease.

"5.
"By letter agreement dated August 29, 1972, Hawkins transferred a portion of his rights under these leases to Guy Scroggins. A copy of that letter agreement is attached hereto as Exhibit `A'; it, and all subsequent exhibits to which reference is made in this pleading are made a part hereof by way of reference, as though set forth herein in extenso.

"6.
"By letter dated June 28, 1973, Scroggins made `Emerald Oil Corporation' and its officer, Alfred Lamson, aware of the agreement of August 29, 1972. A copy of this letter is attached as Exhibit `B'.

"7.
"On the same date, Scroggins, individually transferred his rights under the August 29, 1972 agreement with Hawkins to Guy Scroggins, Inc. A copy of the instrument of transfer is attached hereto as Exhibit `C'.

"8.
"By letter agreement dated June 6, 1973, Hawkins and Emerald agreed:
(a) That Emerald would obtain new leases from the Bayou Bouillion Corporation and Lignum Oil Company, affecting a portion of the lands covered by the October 1, 1971 leases by Lignum and Bayou Bouillion in favor of Hawkins;
(b) That Hawkins would release and relinquish his rights under the October 1, 1971 leases as to the lands covered by the new leases in favor of Emerald;
(c) That Hawkins would receive an overriding royalty interest, affecting the lands covered by the new leases to Emerald, convertible to a working interest after payout;
(d) That, in the event of conversion, Hawkins should `execute the same joint operating agreement as that executed by the other working interest participants'.
"A copy of the June 6, 1973 agreement is attached hereto as Exhibit `D'.

*682 "9.
"On June 7, 1973, Emerald obtained a new lease from the Bayou Bouillion Corporation. A copy of that lease is attached as Exhibit `E'.

"10.
"On the same date, Emerald obtained a new lease from Lignum Oil Company. A copy is attached as Exhibit `F'.

"11.
"On June 7, 1973, Hawkins and Scroggins were requested to execute a document prepared by Emerald, in which both Hawkins and Scroggins partially released rights held by them under the October 1, 1971 lease by Lignum to Hawkins. Both Hawkins and Scroggins did execute this document, a copy of which is attached as Exhibit `G'.

"12.
"On the same date, Hawkins and Scroggins were requested (by Emerald) to execute, and did execute, a similar partial release covering their rights under the October 1, 1971 lease by the Bayou Bouillion Corporation to Hawkins. A copy of this document is attached as Exhibit `H'.

"13.
"On July 16, 1973, Emerald and Hawkins executed a letter agreement providing in part as follows:
"`You and we executed letter agreement dated June 6, 1973, wherein we agree to assign to you 4% of 8/8ths overriding royalty with a conversion factor. Since this date you have agreed for us to assign Guy Scroggins 1/8th of your Interest, which has been done under date of July 2, 1973. In return, Scroggins is to execute the partial release covering the acreage in Section 37, which Partial Release is executed by you to Bayou Bouillon Corporation and you to Lignum Oil Company.'
"A copy of the July 16, 1973 agreement between Emerald and Hawkins is attached as Exhibit `I'.

"14.
"On July 2, 1973, Emerald executed assignments of overriding royalty to both Hawkins and Scroggins. Copies of these assignments are attached as Exhibits `J' and `K'.

"15.
"On August 27, 1973, Emerald, Cox and Dow executed a `Operating Agreement', a copy of which is attached as Exhibit `L'.

"16.
"Numerical Paragraph `i' on Page 15 of the Joint Operating Agreement provides in part as follows:
`(i) The plat attached hereto as Exhibit `E' designates the unit area of interest between the parties hereto as outlined in green. The area within the red outline is subject to letter agreement with Robert E. Eggerton, wherein he is to receive certain overrides, as further set forth in said letter agreement attached hereto as Exhibit `E'.
In the event any party hereto (`acquiring party') acquires any leasehold or unleased mineral interest within the unit area, the other party (`offeree') shall be entitled to acquire `an interest in such an interest in the same proporation as his or its ownership of the leases covered hereby, upon payment of his or its proportionate part of the actual costs of acquisition. The acquiring party shall furnish the offeree a copy of the instrument of acquisition together with a statement of the costs of such acquisition. The offeree shall have a period of fifteen days after receipt of notice within which to elect to participate in the cost of the acquisition. If, however, a well is then being drilled within the area, the result of which could effect the value of the offered interest, the acquiring party shall so advise the offeree and the election must be made within 24 hours. If the acquiring party has not received notice of the election within the period provided for above, it shall be conclusively presumed that the offeree has elected to participate in the acquisition ...'

*683 "17.
"On information and belief, Exhibit `L' is the only Joint Operating Agreement executed by the working interest participants in the subject leasehold as of this time.

"18.
"By instruments dated, respectively, January 21 and 23, 1975, Hawkins, then Scroggins, elected to convert their overriding royalty interests to working interests. Copies of the instruments of election are attached as Exhibits `M' and `N' respectively.

"19.
"Both prior and subsequent to the election aforesaid, Hawkins and Scroggins demanded the right to sign the Joint Operating Agreement, and, upon complying with Paragraph (i) on Page 15 thereof, to share in production from the entirety of the `unit area of interest' specified therein.

"20.
"Notwithstanding the provisions of the written agreements to which reference is made hereinabove, neither Hawkins nor Scroggins were afforded an opportunity to `execute the same Joint Operating Agreement as that executed by the other working participants'.

"21.
"By written instruments, which constitute a portion of the public records of the State of Louisiana and its parishes, Guy Scroggins, Inc. changed its name to Elise Scroggins, Inc., then conveyed all of its right, title and interest under the documents aforesaid to a new corporation, the plaintiff in this action, Guy Scroggins, Inc. The plaintiff specifically reserves the right to file of record, at an appropriate time, copies of the documents aforesaid, and to include those documents as exhibits to this Second Supplemental and Amending Petition.

"22.
"At all pertinent times, all defendants were aware of the written instruments to which reference is made hereinabove, and recognizant of the right of Guy Scroggins, Inc. to sign `the same Joint Operating Agreement as that executed by the other working interest participants'.

"23.
"This Court should order the defendants to specifically perform their obligations under the June 6 agreement and the Joint Operating Agreement."
Plaintiff prays "For specific performance of the contractual obligations assumed by all defendants under the June 6 agreement and the Joint Operating Agreement." He does not pray for specific performance of the July 2, 1973 assignment by Emerald to plaintiff.
The provisions of Paragraph "i" of the Joint Operating Agreement, quoted above from Paragraph 16 of plaintiff's supplemental petition, would give plaintiff, if he could become a party to that agreement, the right to participate in production from all leases covered thereby. This is the particular clause of which plaintiff seeks specific performance and to which defendants strenuously object.
The district court, in sustaining the exceptions of no cause or right of action, held that Scroggins had failed to allege written contracts by which he is entitled to sign the joint operating agreement and thereby acquire the lease interests. The court cites Hayes v. Muller, 245 La. 356, 158 So.2d 191 (La.1963). In Hayes, plaintiffs sought to recover profits derived from the purchase and sale of oil and gas leases under an oral agreement of joint venture which was never reduced to writing. The Supreme Court, on rehearing, held that an agreement affecting mineral leases could not be proved by parol evidence. Thus, plaintiffs' petition, which failed to show a written contract, did not state a cause of action.
Although both may be raised by the peremptory exception, there is no combined exception of "no cause or right of action." Bamber Contractors, Inc. v. Henderson Bros., Inc., 345 So.2d 1212 (La.App. 1st Cir. *684 1977). However, since the district court, in its formal judgment, sustained defendant's exception of no cause of action, we will treat the instant case as before us only on the exception of no cause of action. LSA-C.C.P. Article 927(4).
The peremptory exception of no cause of action tests the legal sufficiency of plaintiff's petition and questions whether the law affords plaintiff any remedy whatsoever under the allegations of his petition. The exception is triable solely on the face of the petition and any annexed documents or exhibits. All well-pleaded allegations are accepted as true, and any doubts must be resolved in favor of the sufficiency of the pleading to state a cause of action. Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La.1975); Guillory v. Nicklos Oil & Gas Company, 315 So.2d 878 (La.App. 3rd Cir. 1975).
Plaintiff contends the district court erred in applying the rule in Hayes v. Muller, supra, to the facts of the present case. He urges that, unlike Hayes the pertinent agreements herein involved were reduced to writing. Thus, plaintiff argues there is no need to resort to parol evidence to prove his rights to acquire an interest in the mineral leases involved.
Mineral rights, including mineral leases, are classified under the Mineral Code as incorporeal immovables and are subject to the Civil Code articles respecting immovable property. LSA-R.S. 31:2, 16 and 18. As such, ownership of a mineral lease or an interest therein cannot be established by parol evidence. It must be evidenced by a written contract. LSA-C.C. Articles 2275, 2276; Little v. Haik, 246 La. 121, 163 So.2d 558 (La.1964). In the absence of such written agreements, plaintiff is also precluded from recovering damages for the alleged breach thereof. Slay v. Smith, 368 So.2d 1144 (La.App. 3rd Cir. 1979); Davidson v. Midstates Oil Corporation, 211 La. 882, 31 So.2d 7 (1947); H. A. Bauman, Inc. v. Tilly, 185 So. 504 (La.App.2d Cir. 1938); Hayes v. Muller, supra.
In light of the above stated principles, plaintiff's petition, together with the annexed documents, must alone establish his right to become a party to the joint operating agreement and participate in all production thereunder, or, in the alternative, to sue for damages. Our consideration of plaintiff's petition and the attached documents convinces us that plaintiff has failed to state a cause of action for either remedy.
Plaintiff's claim for specific performance or damages rests primarily on two basic agreements to which he is not a party. The first is the agreement dated June 6, 1973 entered into between Emerald and Hawkins. Under this agreement, Hawkins was to receive 4% of 8/8ths overriding royalty interest on leases to be acquired by Emerald from the Bayou Bouillion Corporation and Lignum Oil Company, with an option to convert to a working interest on payout. In exchange, Hawkins agreed to release his rights held under his original leases from Lignum and Bayou Bouillion. These leases were subsequently acquired by Emerald on June 7, 1973. It is the June 6 agreement which contains the crucial provision granting Hawkins the right, after payout, to convert his overriding royalty to a working interest in the leases, and "to execute the same joint operating agreement as that executed by the other working interests participants." Hawkins is not a party to this litigation.
Although plaintiff admittedly was not a party to the June 6 agreement, he contends that by a subsequent letter-agreement between Emerald and Hawkins, dated July 16, 1973, he, in effect, became a party to the June 6 agreement. The July 16 agreement contains the following reference to plaintiff:
"You and we executed letter agreement dated June 6, 1973, wherein we agreed to assign to you 4% of 8/8ths overriding royalty with a conversion factor. Since this date you have agreed for us to assign Guy Scroggins 1/8th of your Interest, which has been done under date of July 2, 1973. In return, Scroggins is to execute *685 the partial release covering the acreage in Section 37, which Partial Release is executed by you to Bayou Bouillon Corporation and you to Lignum Oil Company."
This portion of the July 16 agreement, in our opinion, appears to be nothing more than a confirmation of previous agreements between Hawkins, Scroggins and Emerald. We do not read this agreement as granting plaintiff any greater rights than those he already had under the July 2 contract, nor as creating any new privity of contract between plaintiff and Emerald. The only contract existing between plaintiff and Emerald is the July 2 assignment. Under this contract, plaintiff was assigned an overriding royalty of 1/8th of 4% of all oil and gas produced under the described leases. Scroggins was also granted the right under certain conditions to convert his overriding royalty to a corresponding portion of the leasehold interests in the leases described. However, nowhere in this agreement is there a provision granting plaintiff the right to become a party to any operating agreement signed by Emerald or by any other party.
We are further supported in our finding by the fact that neither Dow nor Cox were parties to the June 6 agreement, nor was Hawkins a party to the August, 1973 joint operating agreement, Paragraph (I) of which is the clause upon which plaintiff relies for his demand for specific performance. It is doubtful whether even Hawkins could assert any right against Cox or Dow, since no privity of contract exists between these parties and Hawkins. But, that issue is not before us, since Hawkins is not a party to this suit.
In conclusion, plaintiff has failed to allege written agreements which entitle him to the relief he seeks. Accordingly, the exceptions of no cause of action were properly sustained by the trial court.
For the reasons assigned, the judgment appealed is affirmed. All costs of appeal are assessed against plaintiff-appellant.
AFFIRMED.