577 So.2d 274 (1991)
PETROCANA, INC., Plaintiff-Appellant,
v.
MARGO, INC., et al., Defendants-Appellees.
No. 89-867.
Court of Appeal of Louisiana, Third Circuit.
March 13, 1991.
Rehearing Denied April 22, 1991.
*275 Ingram, Baker, Allen R. Ingram, and Duncan M. Smith, Lafayette, for plaintiff-appellant.
Shelton & Legendre, Robert Shelton, Elizabeth Gresham, Lafayette, for defendants-appellees.
*276 Before FORET, KNOLL and KING, JJ.
KNOLL, Judge.
Petrocana, Inc. appeals the trial court's grant of a peremptory exception of no cause of action in favor of defendants, W.E. Krueger; Margo, Inc.; Margo, Inc., Defined Benefit Plan; Billy C. Cox; and, Charlotte Cox. The sole issue before us is whether the trial court properly sustained defendants' peremptory exception. We affirm.

FACTS
The relevant facts set forth in Petrocana's petition were succinctly summarized by the trial court as follows:
"This litigation arises out of a letter agreement by and between the plaintiff, PETROCANA, INC. (Petrocana or plaintiff) and MARGO, INC. It is dated July 1, 1981, and was agreed to and accepted on July 9, 1981, by W.E. Krueger, President of Margo. A copy of the agreement is attached to plaintiff's original petition as Exhibit A.
At the time the agreement was entered into Petrocana was the owner of certain mineral leases covering 218.54 acres in the Hayes Field of Jefferson Davis Parish, and the letter agreement sought to create a `farm-out' agreement for the prospective drilling of a test well by Margo, Inc., on or before January 1, 1982. If Margo, Inc. established commercial production by the drilling of the well, Petrocana, Inc., agreed to convey to Margo the full working interest in the leases as to certain depths and acreage.
The letter agreement also delineated an area of mutual interest (AMI) which would be created if the terms and conditions of the form-out [sic] materialized. With reference to the AMI the agreement provided:
'An Area of Mutual Interest (AMI) is outlined in red around the prospect. Within the AMI the parties hereto agree to cooperate. Should Margo acquire any additional lease rights from others whether by purchase, assignment, farm-in, or otherwise, Petrocana will be due 5% overriding royalty. The AMI shall exist as long as Margo is active in the area.'
The agreement also provided that `failure by Margo to conduct the required operation shall result in termination of this agreement and forfeiture of all rights hereunder.'
In this suit filed on September 23, 1986, Petrocana is seeking to enforce that part of the agreement dealing with the area of mutual interest. It seeks to be declared and recognized as owner of a 5% overriding royalty interest in the mineral leases acquired or obtained by or in which any of the defendants have or own an interest covering lands within the AMI since the date of said letter agreement including, but not by way of limitation, the oil, gas and mineral leases acquired by Margo, Inc. from Natomas of North America, Inc. in the conveyance effective as of 7:00 o'clock A.M. on July 1, 1983. Also, plaintiff seeks an accounting for any and all production and revenues received from the production of oil, gas and hydrocarbons from the AMI since the acquisition by the defendants and to be further recognized as owner of a 5% overriding royalty interest in respect to any and all revenues from the production of oil, gas and other hydrocarbons from the mineral leases covering lands within the AMI. Further, plaintiff seeks a money judgment and damages."

NO CAUSE OF ACTION
Petrocana contends that the trial court improperly sustained defendants' peremptory exception of no cause of action. Alternatively, Petrocana contends that its petition should not have been dismissed because it claimed damages which were not dependent upon a finding that it owned an interest in the leases at issue.
The purpose of the peremptory exception of no cause of action is to test whether plaintiff's allegations entitle it to any remedy whatsoever at law. For purposes *277 of deciding this exception, all well pleaded allegations of the petition must be taken as true. Any doubt as to the sufficiency of the petition must be resolved in favor of plaintiff. Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La.1975). It is well settled that a peremptory exception of no cause of action tests the legal sufficiency of the petition and for the purposes of the validity of this exception all well pleaded allegations of fact are accepted as true, and, if the allegations set forth a cause of action as to any part of the demand, the exception must be overruled. Haskins v. Clary, 346 So.2d 193 (La.1977). An exception of no cause of action must be overruled unless the allegations of the petition exclude every reasonable hypothesis other than the premise upon which the defense is based; that is, unless the plaintiff has no cause of action under any evidence admissible under the pleadings. Darville v. Texaco, Inc., 447 So.2d 473 (La.1984), reconsideration den., 448 So.2d 1302 (La.1984).
Defendants excepted to Petrocana's petition on the basis that the petition failed to state a cause of action for any ownership rights of plaintiff in and to royalty interests, overriding royalty interest, or any other form or type of mineral interest for which no valid agreement existed in writing. Additionally, defendants excepted on the basis that Petrocana's petition failed to state a cause of action for any accounting for production or revenues therefrom or for money owed or damages claimed.
Basically, defendants contended that the letter agreement of July 9, 1981, terminated on January 1, 1982, and all rights thereunder were forfeited when Margo, Inc. did not drill a test well, and therefore all rights under the letter agreement were forfeited by the terms of the letter agreement, including the purported area of mutual interest. (See the Letter Agreement attached hereto as Exhibit A.)
Conversely, Petrocana contended that the purpose of the AMI was to protect both parties to the agreement and prevent either party from taking unfair advantage of the other by obtaining an interest adverse to the interests of the other within the AMI. Additionally, Petrocana contended that it is customary in such agreements for an AMI to remain in effect for an extended period of time. Petrocana agreed with defendants that if Margo, Inc. did not drill the test well, it would earn no rights in the leases, but contended that the parties' intent was that the AMI would continue in effect "as long as Margo is active in the area" regardless of whether Margo, Inc. drilled a test well.
The trial court rejected Petrocana's argument and found that as a result of Margo, Inc.'s failure to drill the test well, all rights and obligations between the parties terminated, including any rights of Petrocana arising from the creation of a purported area of mutual interest. The trial court rejected Petrocana's argument that the part of the letter agreement establishing an AMI did not terminate by the terms of the letter agreement itself. The trial court found that in order for the AMI provisions to be binding, it was necessary for either Margo to drill the test well or necessary that Petrocana's petition allege another written document or agreement which entitled it to the claimed overriding royalty interest, other than the letter agreement of July 9, 1981, which terminated.
Petrocana contended in the trial court and again asserts on appeal that the AMI was extended beyond the termination date of the letter agreement by a verbal agreement.
In Wilkins v. Hogan Drilling Co., Inc., 424 So.2d 420, at 422, 423 (La.App. 2nd Cir.1982), our brethren of the Second Circuit stated:
"The transfer of an interest in a mineral right cannot be the subject of a verbal agreement and cannot be proved by parol evidence. Acadian Production Corp. of Louisiana v. Tennant, 222 La. 653, 63 So.2d 343 (1953).
Parol evidence cannot be used to prove title to any mineral right nor to prove any claim for or interest in the revenues from a mineral right. Hayes v. Muller, 245 La. 356, 158 So.2d 191 (1963); Little v. Haik, 246 La. 121, 163 So.2d 558 *278 (1964); Guy Scroggins, Inc. v. Emerald Exploration, 401 So.2d 680 (La.App. 3d Cir.1981), writ denied, 404 So.2d 1257 (La.1981); LSAC.C. arts. 2275, 2276; LSA-R.S. 31:18.
A verbal agreement of joint venture or partnership as to mineral rights cannot be proved and one cannot recover damages for the alleged breach of such an agreement. Slay v. Smith, 368 So.2d 1144 (La.App. 3d Cir.1979)."
Considering the jurisprudence, it is clear that parol evidence is inadmissible to prove the existence of an extension by verbal agreement of the transfer of an interest in an immovable since such an agreement would be invalid and unenforceable under Louisiana law. Accordingly, we find that the trial court correctly found that in order for Petrocana to recover an interest in a mineral right, its petition must allege some other written agreement or document other than the letter agreement of July 9, 1981, which has now been terminated. Therefore, in the absence of such an allegation, Petrocana failed to state a cause of action against defendants.
Furthermore, we agree with the trial court's finding that Petrocana stated no cause of action for any accounting for production or revenues arising out of any alleged overriding royalty interest. Likewise, we find that the petition failed to state a cause of action for any award of penalties and attorney's fees insofar as Petrocana has alleged no facts whereupon such remedy is available to it.
We now turn our attention to Petrocana's alternative contention that its petition includes several claims which are not dependent upon a finding that Petrocana owned an interest in the mineral leases at issue. In making this assertion, Petrocana relies on paragraphs 11-19 and 21 of its petition. (See Exhibit B of this opinion which reproduces those allegations relied upon.)
Petrocana alleges in paragraphs 11 through 15 that a verbal agreement to extend the farm out agreement existed, and seeks reimbursement for funds it expended for the renewal of mineral leases and rental payments made. After carefully reviewing Petrocana's petition in light of the letter agreement, we find that if there was an oral agreement to extend the farm out agreement, Petrocana's only purpose in the renewal of leases and in making rental payments would have been to earn the mineral interest provided it would obtain if defendants' test well resulted in a commercially producing well. Therefore, considering our affirmation of the trial court's finding that the farm out agreement terminated, it is clear that these allegations fail to set forth a cause of action against defendants.
Allegation 16 of Petrocana's petition state that it is entitled to reimbursement for the fair market value of geological information it furnished defendants to assist Margo, Inc. in the drilling of "the obligatory test well". We disagree, and hasten to underscore that under the letter agreement of July 1, 1981, Margo, Inc.'s drilling of a test well was not obligatory. In its contract with Petrocana, Margo, Inc. paid Petrocana $50,000 to have the right to drill a test well within a six month period and earn a mineral interest in Petrocana's leases; nothing in the agreement provided that Margo, Inc. was obligated to drill the test well within the six month period. If this allegation were characterized it would be an attempt to state a cause of action to recover damages for defendants' non-performance of the farm out agreement. It must be remembered that in the letter agreement the only penalty provided at termination was that defendants would lose the $50,000 consideration they paid and relinquish their right to earn a mineral interest in Petrocana's leases. Therefore, this allegation fails to state a cause of action.
Paragraphs 17 through 19 claim that Petrocana is entitled to an interest in a mineral lease acquired by defendants within the AMI at a time after the farm out agreement had terminated by its terms. We disagree. The letter agreement specifically provided:
"Failure by Margo to conduct the required operation shall result in termination *279 of this agreement and forfeiture of all rights hereunder."
As determined by the trial court, it is clear that Petrocana's rights to enforce any claims in connection with the AMI ceased simultaneously with the passing of the January drilling deadline. Therefore we do not find that these allegations create a cause of action.
Finally, paragraph 21 claims that, as a result of defendants' breach of the farm out agreement and the "misappropriation and utilization" of the geological information furnished by Petrocana to defendants, Petrocana is entitled to damages of $250,000. We again disagree. It is axiomatic that a contract is the law between the parties, unless it is contrary to the law or public morals. LSA-C.C. Art. 1983. It is clear that the letter agreement does not provide for Petrocana's right to recover damages for Margo, Inc.'s failure to drill a test well by the deadline, other than the forfeiture of Margo of its $50,000 payment and its relinquishment of the right to earn a mineral interest in Petrocana's leases. Likewise, the jurisprudence recognizes that if Petrocana entered into a poor business deal, which it could have provided for, the courts cannot step in and write a new contract to grant it relief. Cf. Groom v. W.H. Ward Lumber Co., Inc., 432 So.2d 984 (La.App. 1st Cir.1983); Louisiana Power & Light Co. v. Mecom, 357 So.2d 596 (La.App. 1st Cir.1978). Therefore we do not find that this allegation creates a cause of action.
In summation, we find that none of Petrocana's allegations state a cause of action for a verbal contract. Furthermore, its petition fails to allege a cause of action on the basis of unjust enrichment, equitable estoppel, and/or quantum meruit.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Petrocana.
AFFIRMED.
FORET, J., dissents with written reasons.
*280
 EXHIBIT A
PETROCANA, INC. (318) 234-2337
-----------------------------------------------------------------------------------------
PETROLEUM COMPANY OF LOUISIANA P.O. BOX 51542 OIL CENTER
 LAFAYETTE. LOUISIANA 70505
July 1, 1981
Mr. W.E. Krueger
Margo, Inc.
13401 Southwest Freeway
Sugar Land, Texas 77478
Re: Southwest Extension Prospect of
 Hayes Field
 Jefferson Davis Parish, La.
Dear Mr. Krueger:
 Pursuant to our submittal of pertinent data and your verbal
committment on the deal, when accepted by you this letter will
confirm our agreement with regard to the Southwest Extension
Prospect of Hayes Field.
 Petrocana, Inc. owns the following mineral leases covering
acreage shown in yellow on the attached plat:
 1. Walter W. Atkinson et al, lease dated 5-2-79,
 117.11 acres, Recorded # 416145, # 416146
 2. Reynolds O. Hayes et al, lease dated 5-5-79,
 101.43 acres, Recorded # 417090
 Petrocana agrees to sub-lease these leases to Margo, Inc.
under the following terms and conditions:
 1. $50,000. cash payable with the execution of this
 letter agreement.
 2. On or before January 1, 1982, at a mutually
 acceptable location, Margo, Inc., or assigns,
 shall commence drilling a 12,300 ft. test well
 in a bonafide effort to test the Hayes sand as
 found productive 12,160-300 by Schlumberger
 measurement in the Natomas (formerly Apexco)
 #3 Atkinson well.
 
*281
 If the test well is lost or abandoned before
 reaching contract depth, Margo may drill a
 substitute well commencing within 30 days
 thereafter.
 3. If the test well results in a commercial
 producer Petrocana (without warranty except
 to its own acts) shall assign Margo such of
 the lease rights described above as are
 applicable to the productive zone or zones
 of any unit or units formed around such
 well as the unit well. As to the acreage
 affected, such assignment to Margo will
 convey the full working interest coupled
 with a 75% net revenue interest.
 4. An Area of Mutual Interest (AMI) is outlined
 in red around the prospect. Within the AMI
 the parties hereto agree to cooperate. Should
 Margo acquire any additional lease rights
 from others whether by purchase, assignment,
 farm-in, or otherwise, Petrocana will be due
 5% overriding royalty. The AMI shall exist
 as long as Margo is active in the area.
 In this regard Margo, at Margo's cost and
 expense, authorizes Petrocana to secure a
 lease on certain adjacent Lacassane Co.
 land in Section 25, 11S-6W and Section 19
 and 30, 11S-5W under the most favorable
 terms obtainable, with such being subject
 to the aforementioned 4% ORR. 
 5. Margo may assign all or any portion of its
 rights hereunder provided Margo shall not be
 relieved of its obligations to Petrocana
 hereunder, and any assignment or sub-sub-lease
 by Margo shall provide Margo be
 constituted agent or attorney in fact for
 such assignee or sub-sub-lessee with full
 authority to act in all matters involving
 this agreement and any rights subsequently
 earned hereunder.
 6. Petrocana shall have current access to all
 information relating to all operations hereunder.
 All operations shall be in compliance with the
 terms and provision of the applicable leases
 and/or farmout agreements and in accordance
 with the rules and regulations of any constituted
 regulatory authority having jurisdiction.
*282
 Margo shall hold Petrocana harmless and free
 and clear of any claims or damages of any
 nature arising out of its operations hereunder.
 Failure by Margo to conduct the required
 operations shall result in termination of
 this agreement and forfeiture of all rights
 hereunder.
 This agreement shall not be deemed to establish a partnership,
joint operation, or joint venture under the provisions of the US
Revenue Code or any similar statute of the State of Louisiana.
 Please indicate your acceptance by signing below and returning
an executed copy within ten days.
 Sincerely yours,
 
 Petrocana, Inc.
 Ralph Bown, Jr. President
AGREED AND ACCEPTED: this day of July, 1981.
MARGO, INC.
BY: 
 W.E. Krueger, President
EXHIBIT B
"11.
That the defendants, W.E. Krueger and Margo, Inc., failed to drill the required test well on or before January 1, 1982, in accordance with the obligations set forth in said letter agreement. Premised upon repeated assurances and representations by the defendants, W.E. Krueger and Margo, Inc., that the prospect had been sold to investors and participants and that they did not want or need petitioner to assist in trying to locate investors or participants willing to invest in the drilling of the test well, petitioner granted to the defendants, W.E. Krueger and Margo, Inc., extensions of time within which to commence the drilling of the obligatory test well.
12.
The defendants, W.E. Krueger and Margo, Inc., in consideration of the extensions of time within which to drill the obligatory test well, agreed to be responsible for all costs and expenses to maintain the oil, gas and mineral leases owned by your petitioner in force and effect while defendants continued their efforts to have the test well drilled.

*283 13.
That when the defendants, W.E. Krueger and Margo, Inc., continued to experience difficulties in having the obligatory test well drilled and as the oil, gas and mineral leases owned by petitioner which were subject to the letter agreement were to terminate within the next few months, W.E. Krueger and Margo, Inc. instructed petitioner to attempt to extend and/or renew the mineral leases owned by your petitioner at the expense of W.E. Krueger and Margo, Inc., in order to maintain the mineral leases within the Area of Mutual Interest.
14.
That relying on the instructions and agreement of W.E. Krueger and Margo, Inc. to be responsible for the costs and expenses of extending and/or renewing the mineral leases owned by petitioner, during or about April of 1982, petitioner successfully extended and/or renewed the mineral leases owned by it covering lands within the Area of Mutual Interest at a cost of Eleven Thousand, Four Hundred Eight and 02/100 ($11,408.02) Dollars. Although petitioner has requested and billed the defendants, W.E. Krueger and Margo, Inc., for payment of said costs and expenses incurred in renewing and/or extending said mineral leases, the defendants have failed and refused to pay petitioner therefor.
15.
That continuing to rely on the assurances and representations of defendants, W.E. Krueger and Margo, Inc., that they would drill the obligatory test well and would be responsible for the costs and expenses for maintaining the mineral leases in force and effect, petitioner paid delay rentals on said mineral leases in 1983, in the amount of Ten Thousand, Nine Hundred Forty One and 02/100 ($10,941.02) Dollars and paid delay rentals in 1984, in the amount of Ten Thousand, Nine Hundred Forty Two and 02/100 ($10,942.02) Dollars to maintain said mineral leases in force and effect. Although petitioner has requested the defendants, W.E. Krueger and Margo, Inc., to reimburse it for the delay rental payments for which defendants agreed to be responsible, defendants have failed and refused to reimburse petitioner for the delay rental expenses.
16.
That petitioner believes and therefore alleges that at the time the letter agreement dated July 9, 1981, was entered into with the defendants, W.E. Krueger and Margo, Inc., the defendants had no prior information, knowledge, expertise or experience in the Hayes Field of Jefferson Davis Parish, Louisiana; however, premised on the defendants' [sic] repeated assurances and representations that they would drill the obligatory test well, petitioner obtained and furnished to the defendants geological, geophysical, engineering, land and legal information, data, documentation, records and assistance to assist the defendants in their efforts to sell the prospect and have the test well drilled. Petitioner alleges that the information and assistance furnished the defendants had a fair market value of One Hundred Thousand and No/100 ($100,000.00) Dollars.
17.
That at the request of and to assist the defendants in making presentations of the prospect to potential investors and participants, petitioner made several trips to Houston and Dallas, Texas, at its expense to present, explain and substantiate the geological prospect, data and information to prospective investors and participants of the defendants.
18.
That at the request of the defendants, W.E. Krueger and Margo, Inc., and to assist them in obtaining investors and *284 participants to drill the prospect well, petitioner obtained from Natomas of North America, Inc. detailed production, drilling and engineering data, equipment inventory, electric logs, core records, test records, reservoir evaluations, reserve studies and other materials relating to the Hayes Field in Jefferson Davis Parish, Louisiana.
19.
That instead of the defendants, W.E. Krueger and Margo, Inc., complying with their obligation to drill the test well on the prospect, without the knowledge of petitioner, the defendants misappropriated and utilized the data, information and records furnished by petitioner in connection with the drilling of the obligatory test well, to purchase effective as of 7:00 o'clock A.M. on July 1, 1983, all of the leasehold and operational rights and interests of Natomas of North America, Inc. in the CAM 2 RA SUA established by the Louisiana Office of Conservation Order No. 590-B, which rights and interests cover lands included within the Area of Mutual Interest established by the letter agreement dated July 9,1981. The mineral leases acquired by W.E. Krueger and Margo, Inc. from Natomas of North America, Inc. are colored in orange on the attached plat.
* * * * * *
21.
That as a result of the breach of the letter agreement and contract by W.E. Krueger and Margo, Inc. and the misappropriation and utilization of the geological, geophysical, production, engineering, operational, land, legal and other data, information, documentation and records furnished the defendants, W.E. Krueger and Margo, Inc., your petitioner has sustained damages in an amount of at least Two Hundred Fifty Thousand and No/100 ($250,000.00) Dollars."
FORET, Judge, dissenting.
I respectfully dissent. The majority opinion finds that Petrocana's petition fails to allege a cause of action on the basis of a verbal contract, unjust enrichment, equitable estoppel, and/or quantum meruit. I cannot agree.
Although Petrocana, Inc.'s petition (see Appendix to majority opinion, paragraphs 11-21) states no valid ground for those claims arising out of an alleged overriding royalty interest, Petrocana, Inc.'s petition includes several claims which are not dependent upon a finding by the court that Petrocana, Inc. owned an interest in the leases at issue.
For the purposes of an exception of no cause of action, when given every reasonable interpretation, I find that the allegations of fact set forth in plaintiff's petition allege a cause of action for a verbal contract. Alternatively, at the very least, these allegations are sufficient to state a cause of action for damages and/or reimbursement on the basis of unjust enrichment, equitable estoppel, and/or quantum meruit.
Under the auspices of C.C.P. art. 934, Petrocana is entitled to an opportunity to attempt to remove the grounds for the exception by amending its petition prior to dismissal. As such, I would hold that the trial court was in error in sustaining defendants' exception of no cause of action and in dismissing plaintiff's suit.